UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
ANHAM USA, INC. and ANHAM FZCO,

                              Plaintiffs,

        - against -                                            **OPINION & ORDER**

AFGHAN GLOBAL INSURANCE, LTD.,                                  No. 23-CV-2763 (CS)
CERTAIN UNDERWRITERS OF LLOYD'S,
LONDON, USI INSURANCE SERVICES,
and TYSERS INSURANCE BROKERS,

                              Defendants.
--------------------------------------------------------------x

Appearances:

W. Hunter Winstead
Daniel I. Wolf
Ethan H. Kaminsky
Gilbert LLP
Washington, DC
*Counsel for Plaintiffs*

Edward J. Baines
Ryan M. Jerome
Saul Ewing LLP
New York, New York
*Counsel for Defendant USI Insurance Services*

Edward J. Kirk
Scott W. Schwartz
Clyde & Co US LLP
New York, New York
*Counsel for Defendant Tysers Insurance Brokers*

Seibel, J.

        Before the Court are the motions of Defendant USI Insurance Services, (ECF No. 79),

and Defendant Tysers Insurance Brokers, (ECF No. 85), to dismiss the Amended Complaint,

(ECF No. 72 ("AC")), pursuant to Federal Rule of Civil Procedure ("FRCP") 12, or in the alternative, to stay the action.

## I.   <u>BACKGROUND</u>

### A.   <u>Facts</u>

The AC alleges as follows.  Plaintiff ANHAM FZCO is a government contractor that conducts procurement and logistics around the world, including providing food to United States troops in the Middle East and Afghanistan.  (AC ¶ 22.)  ANHAM FZCO is incorporated and headquartered in Dubai, United Arab Emirates.  (*Id.*)  Plaintiff ANHAM USA, Inc. (together with ANHAM FZCO, "Plaintiffs" or "ANHAM"), is a corporate affiliate of ANHAM FZCO that provides ANHAM FZCO with administrative and management services.  (*Id.* ¶ 21.)  ANHAM USA, Inc. is a Virginia corporation with its principal place of business in Virginia.  (*Id.*)  Defendant USI Insurance Services ("USI") is a Delaware limited liability company with its principal place of business in Valhalla, New York, that provides insurance brokerage and consulting services in connection with, among other things, property insurance and specialty solutions.  (*Id.* ¶ 23.)  USI's sole member is a Delaware corporation with its principal place of business in New York.  (*Id.*)  Defendant Tysers Insurance Brokers ("Tysers" and together with USI, the "Broker Defendants") is a wholesale insurance broker providing international services. (*Id.* ¶ 24.)  Plaintiffs allege on information and belief that Tysers is incorporated and headquartered in the United Kingdom.  (*Id.*)

This case arises from Political Violence Insurance that ANHAM purchased for a 1.3 million square foot warehouse in the Bagram District, Parwan Province, Afghanistan (the "Warehouse" or "Bagram Warehouse"), near the U.S. Air Force base then in Bagram.  (*Id.* ¶¶ 1, 30.)  In 2011, ANHAM began constructing the Bagram Warehouse as part of an effort to secure

a contract to provide food to U.S. troops and others in Afghanistan. (*Id.* ¶ 27.) The construction of the Warehouse – which cost roughly $40 million and was valued by ANHAM at nearly $45 million – was completed in August 2012, after which ANHAM FZCO was awarded the contract by the U.S. Defense Logistics Agency. (*Id.* ¶¶ 28-29.) The Bagram Warehouse's location and unique value, and the sensitivity of its use, required ANHAM to maintain a significant security presence, (*id.* ¶ 32), and it was a valuable potential target for the Taliban, (*id.* ¶ 33). As a result, ANHAM began purchasing Political Violence Insurance in 2012, using USI as its broker and primary point of contact to negotiate the coverage. (*Id.* ¶ 34.) USI entered into a sub-brokering agreement with Tysers under which those parties agreed that USI had "been appointed by the Client [ANHAM] to act as its (re)insurance broker for the purposes of providing advisory and placement services in respect of an insurance contract" and that Tysers was engaged to "assist the Broker in connection with the placement of the Client's [ANHAM's] (re)insurance contract(s)." (*Id.* ¶ 35 (alterations in original); *see* ECF No. 87-1 ("Sub-Brokering Agmt.") ¶ 1.) The agreement further provided that ANHAM had consented to Tysers's engagement as sub-broker but that Tysers would not contact ANHAM and would take instruction only from USI. (Sub-Brokering Agmt. ¶¶ 1-2.)

On January 2, 2014, during negotiations to place the Political Violence Insurance, a representative of ANHAM emailed USI asking, "I see you are using Afghan Global Insurance as the Fronting Company. Who is the primary insurance company?" (*Id.* ¶ 36.)[1] USI responded, "We do not understand this question. It is a legal requirement that this insurance is fronted in

---

[1] Named Defendant Afghan Global Insurance Ltd. ("Afghan Global") is "a private commercial insurance company headquartered and with its principal place of business in Afghanistan." (*Id.* ¶ 25.) According to the AC, Afghan Global has "effectively disappeared," and ANHAM has not been able to engage with the company. (*Id.* ¶ 14.)

Afghanistan and Lloyd's, London Insurers Underwriters will provide the reinsurance.  This will be led by London Underwriters through virtue of the Claims Control Clause contained within our wording."  (*Id.* ¶ 37.)  USI had previously explained that "[f]ronting carriers are admitted insurers (in a country) that issue a policy on behalf of a non-admitted carrier (London or Belgium) without the intention of transferring the risk."  (*Id.* ¶ 38.)  ANHAM, based on USI's advice, agreed with USI's arrangement to place the Political Violence Insurance and instructed USI to bind its coverage on January 3, 2014.  (*Id.* ¶ 37.)

According to the AC, ANHAM was reasonably led to believe that while an Afghan fronting company facilitated the placement of insurance on paper to comply with local laws, the underwriters at Lloyd's, London were the actual insurers and would, pursuant to the "Claims Control Clause" in the policy, take the lead on any claim that ANHAM might make.  (*Id.* ¶ 39.) The AC alleges on information and belief that "the Lloyd's, London Insurers" covered 100% of the risk in the Afghan Global policy, Afghan Global was not involved in the "underwriting, renewal, formulation or placement of ANHAM's insurance coverage beyond issuing local paper and paying local taxes," and Afghan Global typically does not perform underwriting for policies where it does not retain any risk or obligations.  (*Id.* ¶ 40.)[2]  Similarly, the AC alleges on information and belief that "the Lloyd's, London Insurers" underwrote ANHAM's Political

_____

[2] Plaintiffs define "the Lloyd's London Insurers" (sometimes abbreviated in this decision as "the Lloyd's Insurers") to refer to "Certain Underwriters of Lloyd's, London subscribing to Policy No. B0572PV201700 identified in Appendix A, and Certain Underwriters of Lloyd's, London subscribing to Policy No. B0572PV201437 identified in Appendix B."  (AC at 1.) Appendices A and B to the AC list the syndicates and companies subscribing to each policy. (*See id.* at 29.)  This decision refers to these entities using the terms "the Lloyd's Insurers," the "syndicates" or the "subscribers" interchangeably.  The AC does not identify the individuals or entities comprising the syndicates.

Violence Insurance in all material respects and requested that the Broker Defendants arrange the "fronting" with Afghan Global.  (*Id.* ¶ 41.)  ANHAM renewed the Political Violence Insurance bi-annually, using the same insurers and fronting arrangement as discussed above.  (*See id.* ¶ 42.)

After several bi-annual renewals, the Lloyd's Insurers issued Policy Number B0572PV201437 (the "Primary Policy") covering November 7, 2020 to November 7, 2021.  (*Id.* ¶ 44; *see* ECF No. 72-1.)  The Primary Policy identifies ANHAM as the "Original Insured," and its "Risk Details" specify that it covered up to $20 million in losses arising from "RIOTS, STRIKES, CIVIL COMMOTION, MALICOUS DAMAGE, WAR, TERRORISM AND POLITICAL VIOLENCE (INCLUDING TERRORISM AND SABOTAGE) REINSURANCE." (AC ¶ 44; *see* ECF No. 72-1 at 1.)  The Primary Policy set forth the insured interest as follows:

> In respect of Property Damage only as a result of Direct physical loss of or damage to the interest insured caused by or arising from Riots and/or Strikes and/or Civil Commotions including fire damage and loss by looting following Riots and/or Strikes and/or Civil Commotions and/or Malicious Damage, Insurrection, Revolution, Rebellion, Mutiny and/or Coup d'Etat, War and/or Civil War (including Terrorism and Sabotage) to the Insured's Physical Assets as declared to Underwriters and held on file with Tysers.

(AC ¶ 45; *see* ECF No. 72-1 at 1.)  A copy of the Primary Policy was delivered to ANHAM at its Virginia address.  (AC ¶ 44.)  The Lloyd's Insurers also issued ANHAM a $21 million excess policy – containing a scope of coverage and terms materially identical to the Primary Policy – for the same period under Policy Number B0572PV201700 (the "Excess Policy" and together with the Primary Policy, the "Lloyd's Policies").  (AC ¶ 47; *see* ECF No. 72-2 at 1.)   ANHAM paid premiums on the Lloyd's Policies, as well as on the Afghan Global policy, to USI, and believes USI forwarded the payments to the Lloyd's Insurers and Afghan Global.  (AC ¶ 48.)

On August 15, 2021, Taliban forces took control of Parwan Province, including the Bagram Warehouse.  (*Id.* ¶¶ 52, 56.)  ANHAM, through the Broker Defendants, notified its

insurers about these events on August 17, 2021, referencing the Lloyd's Policies, which were the only policies that the Broker Defendants had provided to ANHAM for the Bagram Warehouse for the relevant period.  (*Id.* ¶ 58.)  On October 25, 2021, the Lloyd's Insurers wrote to Afghan Global to request information about the claim and to indicate that it was "taking control of the defense and settlement of any claim made against [Afghan Global] by ANHAM."  (*Id.* ¶ 59.)  The Lloyd's Insurers also requested a copy of the Afghan Global policy, apparently acknowledging that the Lloyd's Insurers were unaware of the policy that they were allegedly reinsuring.  (*Id.*)  Plaintiffs allege that these actions show that Defendants were aware that the risk resided with the Lloyd's Insurers, not Afghan Global.  (*Id.*)

On December 13, 2021, ANHAM filed a Proof of Loss notifying Afghan Global and the Lloyd's Insurers that it sustained a total loss somewhat exceeding the policy limits, and requesting payment of the full $41 million for which the policies provided.  (*Id.* ¶ 60.)  On December 15, 2021, the Lloyd's Insurers' counsel sent Afghan Global correspondence asserting that the Lloyd's Insurers had learned "of certain serious allegations of criminality made against ANHAM that were not disclosed to Reinsurers prior to the inception of the Reinsurances, on 7 November 2020," and that the Lloyd's Insurers were reserving their rights regarding potential breaches under United Kingdom law.  (*Id.* ¶ 62.)  While the Lloyd's Insurers acknowledged receiving ANHAM's Proof of Loss, they asserted that they "have no privity of contract with ANHAM" and reserved their rights. (*Id.* ¶ 63.)

On January 27, 2022, the Lloyd's Insurers wrote again to Afghan Global, restating their reservation regarding potential breaches under United Kingdom law and their claim that they "have no privity with ANHAM," and inquiring, "Did Afghan Global in fact issue an insurance policy (or policies) to ANHAM as envisaged by the Reinsurances?  If so please provide a

copy . . ." (*Id.* ¶ 64.)  The letter also outlined a series of possible defenses to and limitations on coverage.  (*Id.*)  The AC alleges on information and belief that Afghan Global never responded to either of the Lloyd's Insurers' letters.  (*Id.* ¶ 67.)  As of the date of the AC, none of the Defendants have been able to provide ANHAM with a copy of the Afghan Global policy, despite ANHAM's repeated requests.  (*Id.* ¶ 65.)  Plaintiffs allege that the Lloyd's Insurers have adjusted the claim as a direct primary insurer, not a reinsurer, would.  (*Id.* ¶ 66.)

On May 25, 2022, ANHAM's counsel wrote to the Lloyd's Insurers to contest the latter's objections to coverage and to debunk the alleged misrepresentations by ANHAM during the underwriting process.  (*Id.* ¶ 68.)  On August 3, 2022, the Lloyd's Insurers notified ANHAM of their final decision to not provide coverage, their intention to "avoid the Reinsurances" for reasons previously specified in their letters, and their position that any dispute must be litigated in England and Wales and is subject to arbitration in London.  (*Id.* ¶ 69.)  On August 4, 2022, the Lloyd's Insurers wrote Afghan Global to provide a final "Notice of Avoidance," by which Lloyd's Insurers exercised their purported right to avoid participating in ANHAM's coverage. (*Id.* ¶ 70.)

### B.   Procedural History

On April 3, 2023, invoking the Court's diversity jurisdiction, ANHAM filed under seal the Complaint against all Defendants, alleging claims for breach of contract against the Lloyd's Insurers and Afghan Global, negligence against the Broker Defendants, fraud against USI, and civil conspiracy against all Defendants.  (*See* ECF No. 4.)  That same day, ANHAM also filed under seal a proposed order to show cause and temporary restraining order ("TRO").  (ECF No. 5.)  The Court held an *ex parte* hearing and subsequently entered the TRO, restraining Afghan Global and the Lloyd's Insurers from seeking an anti-suit injunction in the United Kingdom, and

issued an order to show cause as to whether a preliminary injunction should be entered.  (ECF Nos. 9, 10; *see* Minute Entry dated Apr. 3, 2023.)  On April 14, 2023, after hearing from both sides, the Court dissolved the TRO and denied ANHAM's request for a preliminary injunction. (ECF No. 38; *see* Minute Entry dated Apr. 14, 2023.)  On April 27, 2023, the Lloyd's Insurers secured an anti-suit injunction from a court in the United Kingdom and commenced an action for a declaratory judgment in that court against ANHAM and Afghan Global.  (*See* ECF No. 49 at 2; 49-1 to 49-3.)  On May 4, 2023, the parties entered into a consent order that modified the anti-suit injunction, permitting ANHAM to notify this Court of the events in the United Kingdom and to seek a stay of the proceedings as they related to the Lloyd's Insurers.  (*See* ECF No. 49-3.) On May 22, 2023, the Court stayed the case against the Lloyd's Insurers pending resolution of the United Kingdom proceeding.  (ECF No. 59.)  On July 25, 2023, the Court held a pre-motion conference to discuss pre-motion letters filed by USI, (ECF No. 58), and Tysers, (ECF No. 64), as well as ANHAM's responses, (ECF Nos. 67, 68; *see* Minute Entry dated July 25, 2023).  At the pre-motion conference, the Court granted ANHAM leave to file the AC.  (*See* Minute Entry dated July 25, 2023.)

On August 18, 2023, ANHAM filed the AC, clarifying USI's citizenship and asserting the same claims as the Complaint but asserting the fraud claim against all Defendants instead of just USI.  (*See generally* ECF No. 72.)  The instant motions and accompanying briefing followed.  (*See* ECF Nos. 79-92.)  USI moves to dismiss the AC for failure to state a claim under FRCP 12(b)(6) or, in the alternative, seeks a stay of the case pending the ongoing proceedings in the United Kingdom.  (*See generally* ECF No. 83 ("USI's Mem.").)  Tysers moves to dismiss for lack of subject-matter jurisdiction under FRCP 12(b)(1), for failure to state a claim under FRCP 12(b)(6), for improper service under FRCP 12(b)(5), and under the doctrine of *forum non*

*conveniens*, or, in the alternative, seeks a stay pending the United Kingdom proceedings.  (*See generally* ECF No. 86 ("Tysers's Mem.").)

Because I find I lack subject matter jurisdiction, I address only that issue.

## II.    LEGAL STANDARD

"A federal court has subject matter jurisdiction over a cause of action only when it has authority to adjudicate the cause pressed in the complaint." *Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008), *vacated and superseded on other grounds on reh'g en banc*, 585 F.3d 559 (2d Cir. 2009).[3]  "Determining the existence of subject matter jurisdiction is a threshold inquiry, and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Id.*  "When jurisdiction is challenged, the plaintiff bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists, and the district court may examine evidence outside of the pleadings to make this determination." *Id.*  "The court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, but jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008), *aff'd on other grounds*, 561 U.S. 247 (2010).

The Court may review extrinsic evidence when considering an FRCP 12(b)(1) challenge to subject-matter jurisdiction. *Papadopoulos v. Comm'r of Social Sec.*, No. 13-CV-3163, 2014 WL 2038314, at *1 (S.D.N.Y. May 15, 2014); *see Arar*, 532 F.3d at 168.  "A federal court's lack of subject matter jurisdiction is not waivable by the parties, and [the Court] must address

---

[3] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

jurisdictional questions before reaching the merits." *Holt v. Town of Stonington*, 765 F.3d 127,

130 (2d Cir. 2014).  Thus, when a defendant moves to dismiss both for lack of subject-matter

jurisdiction and on other grounds such as failure to state a claim upon which relief can be

granted, the Court must address the issue of subject-matter jurisdiction first.  *See Rhulen Agency,*

*Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  "Where a court lacks subject

matter jurisdiction, it must dismiss the complaint in its entirety." *Adames v. Taju*, 80 F. Supp. 3d

465, 467 (E.D.N.Y. 2015); *see* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that

it lacks subject-matter jurisdiction, the court must dismiss the action.").[4]

## III.   DISCUSSION

### A.   The Court Lacks Subject-Matter Jurisdiction

"[A] federal district court's subject matter jurisdiction is available when a federal

question is presented or, if asserting claims under state law under the court's diversity

jurisdiction, when, among other circumstances, the plaintiff[s are] . . . citizen[s] of an American

State, the defendant[s are] . . . citizen[s] of another American State or . . . citizen[s] or subject[s]

of a foreign country, and the amount in controversy exceeds the sum or value of $75,000." *Pesic*

*v. Mauritius Int'l Arb. Ctr. Ltd.*, No. 23-CV-1100, 2023 WL 2989072, at *4 (S.D.N.Y. Apr. 17,

2023); *see* 28 U.S.C. §§ 1331, 1332.  Plaintiffs do not allege a federal question in the Amended

Complaint.  Therefore, the only basis for this Court's jurisdiction would be diversity of

citizenship.

---

[4] A dismissal for lack of subject matter jurisdiction must be without prejudice.  *Katz v.*
*Donna Karan Co., L.L.C.*, 872 F.3d 114, 121 (2d Cir. 2017) ("[W]hen a case is dismissed for
lack of federal subject matter jurisdiction, Article III deprives federal courts of the power to
dismiss the case with prejudice.").

Tysers argues that ANHAM failed to meet both the complete diversity and the amount-in-controversy components of 28 U.S.C. § 1332.  (Tysers's Mem. at 7-8.)  First, Tysers contends that ANHAM has failed to affirmatively allege the identity and citizenship of the Lloyd's Insurers' "Names" – that is, the anonymous underwriters who form the Lloyd's syndicates that subscribe to the Policies.  (*Id.*)  The AC alleges that the Defendant "Certain Underwriters" are those listed in Appendices A and B, which list the syndicates that are the "issuers and subscribers" of the Lloyd's Policies.  (AC ¶ 26; *id.* Apps. B, C.)  It further alleges on information and belief that "none of these subscribers are citizens or residents of the state of Virginia, (*id.* ¶ 26), which Tysers contends is not sufficient, as it does not address the citizenship of the individual Names that make up the syndicates, (Tysers's Mem. at 7-8).  ANHAM counters that the AC's allegations, and a letter from the Lloyd's Insurers' U.S. counsel advising that "no Reinsurer or any of its unincorporated syndicates or names making up such syndicates is a citizen of the state of Virginia," (ECF No. 92-1), are sufficient to allege citizenship for purposes of § 1332.  (ECF No. 90 ("Ps' Opp.") at 9-10.)

Tysers also argues that ANHAM has failed to meet the amount-in-controversy requirement because each Name is only severally liable and ANHAM does not allege that the amount of liability faced by each individual Name exceeds $75,000.  (Tysers's Mem. at 9.)  ANHAM contends that the allocation of each subscriber's (that is, each syndicate's) share of the $41 million risk, as set forth in the policies, is sufficient to establish the amount-in-controversy requirement.  (Ps' Opp. at 9.)  ANHAM also points to the anti-suit injunction that prohibits further discovery of the Names and suggests that any Names who do not meet the amount-in-controversy requirement can later be dropped to preserve diversity under FRCP 21.  (*Id.* at 10.)

### 1.      Citizenship and Complete Diversity

"It is axiomatic that, for diversity jurisdiction to be available, all of the adverse parties in a suit must be completely diverse with regard to citizenship." *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998); *see Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96 (E.D.N.Y. 2019) (party invoking diversity jurisdiction "bears the burden of demonstrating that the grounds for diversity exist and that diversity is complete"). Citizenship depends on the party's nature. *See Prime Prop. & Cas. Ins. Inc. v. Elantra Logistics LLC*, No. 20-CV-5737, 2021 WL 4066737, at *2 (S.D.N.Y. Sept. 7, 2021).   An unincorporated association has the citizenship of its members. *See Jaser v. N.Y. Prop. Ins. Underwriting Ass'n*, 815 F.2d 240, 242 (2d Cir. 1987) ("The citizenship of an unincorporated association for diversity purposes has been determined for [over] 100 years by the citizenship of each and every member of that association.") (collecting cases); *Underwriters at Lloyd's, London v. Osting-Schwinn*, 613 F.3d 1079, 1086 (11th Cir. 2010) ("[U]nincorporated associations do not themselves have any citizenship, but instead must prove the citizenship of each of their members to meet the jurisdictional requirements of 28 U.S.C. § 1332.").

Lloyd's, London has a unique structure that complicates the assessment of complete diversity.  It is an unincorporated insurance marketplace comprised of anonymous underwriters who invest in a percentage of an insurance policy's risk.  *See E.R. Squibb*, 160 F.3d at 929; *Prime Prop.*, 2021 WL 4066737, at *2.  These anonymous underwriters are called "Names," and each Name is unlimitedly, but severally, liable for its share of the loss on any given policy.  *See Prime Prop.*, 2021 WL 4066737, at *2.  The Names organize together and form "syndicates" to underwrite insurance policies, but these syndicates have "no independent legal identity."  *See id.* Because many Names from different syndicates are typically involved in underwriting a policy,

each syndicate appoints one of its Names to act as the lead underwriter that represents the interests of the individual Names and is the only Name disclosed on the policy for that syndicate. *See E.R. Squibb*, 160 F.3d at 929; *Prime Prop.*, 2021 WL 4066737, at *2.  Where a syndicate's lead underwriter is sued in a representative capacity, "each and every Name whom the lead underwriter represents must be completely diverse." *Id.* at 939; *see Certain Underwriters at Lloyd's of London v. Illinois Nat. Ins. Co.*, No. 09-CV-4418, 2012 WL 4471564, at *1 (S.D.N.Y. Sept. 24, 2012) ("For jurisdictional purposes, courts generally consider the citizenship of each Name in a Lloyd's syndicate.").

Thus, the underwriting syndicates subscribing to the Lloyd's Policies are unincorporated business organizations that have the citizenship of each of their member Names.  *See Prime Prop.*, 2021 WL 4066737, at *3 (citing *Osting-Schwinn*, 613 F.3d at 1088-89).  And "without knowledge of that citizenship [of the Names], it [is] impossible to say that complete diversity exists." *E.R. Squibb*, 160 F.3d at 930; *see Prime Prop.*, 2021 WL 4066737, at *3 ("When the pleadings identify neither the citizenships of the individual investors nor of the managing/lead underwriter for Lloyd's, the Court cannot determine the defendant's citizenship."); *Long Island Lighting Co. v. Aetna Cas. & Sur. Co.*, No. 96-CV-9664, 1997 WL 567342, at *2 (S.D.N.Y. Sept. 11, 1997) ("[J]urisdiction over Lloyd's can exist only if there is complete diversity between the plaintiff and each of the Names who is severally liable for losses under the relevant insurance policies.").  Here the record does not contain sufficient allegations of fact to support complete diversity of citizenship.[5]  *See Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals,*

---

[5] The AC adequately pleads the completely diverse citizenship of Tysers and USI, and those Defendants do not contend otherwise.  (*See* AC ¶¶ 23-24; *see generally* Tysers's Mem; USI's Mem.)

*Inc.*, 943 F.3d 613, 618 (2d Cir. 2019) ("A district court may not assume subject-matter jurisdiction when the record does not contain the necessary prerequisites for its existence.").

ANHAM alleges that "[u]pon information and belief, none of these [Lloyd's] subscribers are citizens or residents of the state of Virginia." (AC ¶ 26.) Attached to the AC are two appendices listing the syndicates that subscribed to the respective Lloyd's Policies and underwrote the risk, (*see id.* at 29), and the Lloyd's Policies identify the lead Names for each of the subscribing syndicates, (ECF No. 72-1 at 28-31; ECF No. 72-2 at 28-31). ANHAM also submits a letter from the Lloyd's Insurers' U.S. counsel advising that "no Reinsurer or any of its unincorporated syndicates or names making up such syndicates is a citizen of the state of Virginia under prevailing law." (ECF No. 92-1 at 2.)

But these allegations are not sufficient to plead the citizenship of the Names comprising the syndicate subscribers. It is well established that a plaintiff must positively aver the basis for jurisdiction. *See Cameron v. Hodges*, 127 U.S. 322, 325 (1888) ("[The Supreme Court of the United States] has always been very particular in requiring a distinct statement of the citizenship of the parties, and of the particular state in which it is claimed"); *Brown v. Keene*, 33 U.S. 112, 115 (1834) ("The decisions of this court require, that the averment of jurisdiction shall be positive, that the declaration shall state expressly the fact on which jurisdiction depends."); *Morrison*, 547 F.3d at 170 ("[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it."); *Sikorsky Aircraft Corp. v. Lloyds TSB Gen. Leasing (No. 20) Ltd.*, 774 F. Supp. 2d 431, 440 (D. Conn. 2011) ("Diversity of citizenship should be distinctly and positively averred in the pleadings, or should appear with equal distinctness in other parts of the record.").

Thus, alleging that a party is "a citizen of a different state" than an adversary "is insufficient to show that the diversity requirement is met because, standing alone, it is entirely conclusory." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016); *see Keene*, 33 U.S. at 115 (statement of jurisdiction must be express; not sufficient that "jurisdiction may be inferred argumentatively"); *FD Special Opportunities V, LLC v. Silver Arch Cap. Partners, LLC*, No. 21-CV-797, 2022 WL 16837967, at *2 (S.D.N.Y. Nov. 9, 2022) (allegation that "no member of Plaintiffs 'is a citizen of the State of New Jersey'" was conclusory and insufficient to set forth the citizenship or identity of plaintiffs); *Patrick Cap. Mkts., LLC v. Ascend Real Est. Partners, L.P.*, No. 21-CV-6004, 2022 WL 294638, at *5 (S.D.N.Y. Feb. 1, 2022) ("It is not enough to allege, in conclusory fashion, that none of an LLC's members are citizens of the same state as the [plaintiff].").

Accordingly, "[d]istrict courts in this Circuit regularly hold that allegations that . . . none of the members of [an unincorporated business association such as] a defendant limited liability company are citizens of the same state as the plaintiff[] are insufficient to invoke diversity jurisdiction." *Kenshoo, Inc. v. Aragon Advert., LLC*, 586 F. Supp. 3d 177, 180 (E.D.N.Y. 2022) (collecting cases); *see Lachmanaya v. Rocky Towing, LLC*, No. 23-CV-133, 2023 WL 2329855, at *2 (E.D.N.Y. Mar. 2, 2023) ("[T]he allegation that [a] member [of an LLC] is 'not a citizen of New York' would not establish the member's citizenship . . . ."); *Tutor Perini Bldg. Corp. v. N.Y.C. Reg'l Ctr., LLC*, No. 20-CV-731, 2020 WL 7711629, at *2 (S.D.N.Y. Dec. 29, 2020) ("[Plaintiff's] blanket assertion that, to its knowledge, no defendant is a citizen of Arizona or Nevada does not remedy this defect [of failing to allege complete citizenship of the named parties]."); *Brown v. Diversified Maint. Sys., LLC*, No. 16-CV-230, 2016 WL 3207712, at *3 (W.D.N.Y. June 10, 2016) ("conclusory negative assertions" are simply "not good enough" in

light of the case law); *Sikorsky*, 774 F. Supp. 2d at 438, 442-43 (allegation that "none of the defendants is a citizen of the same state as the plaintiffs" did not invoke diversity jurisdiction with respect to Lloyd's underwriter defendants).

Nor does the letter from the syndicates' U.S. counsel help, given that a statement of citizenship is a legal conclusion, and a court cannot rely on a lawyer's opinion on that subject, at least where the identities of the individuals at issue are not known. *Kenshoo*, 586 F. Supp. 3d at 184-85.

Thus, the allegations that none of the subscribers of the Lloyd's Policies is a citizen or resident of Virginia, (AC ¶ 26), nor are any of the Names comprising those subscribing syndicates, (ECF No. 92-1 at 2), "fail to specifically state the facts upon which diversity jurisdiction depends, *i.e.*, the citizenship and identity of [the Lloyd's syndicates'] members (and those members' members, etc.)." *FD Special Opportunities*, 2022 WL 16837967, at *2. Likewise, while the Lloyd's Policies identify the lead Names for each of the subscribing syndicates, those documents neither contain any allegations of the citizenship of those lead Names nor identify or state the citizenship of the remaining Names that make up the syndicates, (*see* ECF No. 72-1 at 28-31; ECF No. 72-2 at 28-31), which also does not satisfy Section 1332's citizenship requirement, *see Those Certain Underwriters at Lloyd's London v. Sophisticated Invs. Inc.*, No. 20-CV-3592, 2022 WL 507437, at *4 (E.D. Pa. Feb. 18, 2022) ("Plaintiffs' failure to identify and provide citizenship information for all the Names makes it impossible for the Court to determine whether there is complete diversity among parties.").

Plaintiffs point out that the identities of the individual Names are not publicly available. (Ps' Opp. at 9.) "No doubt, the combination of the statutory requirements for diversity jurisdiction and the lack of public information about ownership of unincorporated associations

often makes it difficult to proceed in federal court when a case involves" Lloyd's.  *Kenshoo*, 586

F. Supp. 2d at 181.  "But at least when it comes to citizenship for diversity purposes, that is the

way Congress wants it."  *Id.*  Nor does the inability to identify the Names leave Plaintiffs without

recourse.  "The claims in plaintiff's complaint are all common law causes of action sounding in

contract or tort, the kind of claims that the New York state courts hear every day."  *Id.*  "There is

no reason to stretch the requirements for subject matter jurisdiction when," at the time Plaintiffs

commenced this case in federal court, they could have "walk[ed] [down] the street (literally) and

have [had] the same law applied to its claims that would be applied here."  *Id.* at 182.

In sum, because the court lacks information as to "the identity, let alone the citizenship,

of the Names involved in the case," *E.R. Squibb*, 160 F.3d at 930, and because a court must

"consider the citizenship and amount in controversy *as to each Name* for the purposes of

diversity analysis," *PHL Variable Ins. Co. v. Cont'l Cas. Co.*, No. 19-CV-6799, 2020 WL

1288454, at *3 (N.D. Cal. Mar. 18, 2020) (emphasis in original), Plaintiffs have not met their

burden to show complete diversity, *see Kenshoo*, 586 F. Supp. 3d at 184 ("[O]ne simply cannot

reach the legal conclusion of citizenship without knowing the name of or other information about

the party in question, and plaintiff admits that it does not.").  Thus, ANHAM has failed to plead

complete diversity to invoke diversity jurisdiction under 28 U.S.C. § 1332, and the case must be

dismissed for lack of subject matter jurisdiction.[6]

_____

[6] While this Court has commonly permitted limited jurisdictional discovery to confirm or
disprove complete diversity, *see, e.g.*, *Tutor Perini*, 2020 WL 7711629, at *3 (collecting cases),
such discovery is not currently possible regarding the Lloyd's Names because of the anti-suit
injunction issued by the court in the United Kingdom, (*see* ECF No. 49-3 at 2 ("Until judgement
in this action or further order of the Court, [ANHAM] must not . . . take any steps in or otherwise
participate in proceedings in any court or tribunal, including the proceedings filed by [ANHAM]
against [the Lloyd's Insurers] in the United States District Court for the Southern District of New
York . . . against [the Lloyd's Insurers] . . . in respect of any dispute arising out of or in

2.    **Amount in Controversy**

Diversity jurisdiction also requires an amount in controversy exceeding $75,000.  *See* 28

U.S.C. § 1332.  "A party invoking the jurisdiction of the federal court has the burden of proving

that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional

amount."  *Klaneski v. State Farm Mut. Auto. Ins. Co.*, 680 F. Supp. 3d 170, 181 (D. Conn. June

30, 2023); *see Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir.

2003) (to same effect).  "In conducting this inquiry, courts in the Second Circuit apply a

rebuttable presumption that the face of the complaint is a good faith representation of the actual

amount in controversy."  *Klaneski*, 680 F. Supp. 3d at 181.  But "the presumption is available

only if the face of the complaint alleges facts plausibly suggesting the existence of claims

aggregating over the jurisdictional minimum amount in controversy."  *Schwartz v. Hitrons Sols.,*

---

connection with the reinsurance policies with unique market references B0572PV201437 and
B0572PV201700. . . ."); *see also* ECF No. 49-2; ECF No. 49 at 2).

Relatedly, in *E.R. Squibb* the Second Circuit noted a potential alternative to save diversity
jurisdiction for cases involving Lloyd's underwriters.  It concluded that if the plaintiff sued a
syndicate's lead Name in an individual, rather than representative, capacity, and alleged that the
lead Name individually satisfied Section 1332's diversity and amount-in-controversy
requirements, that would suffice for purposes of diversity jurisdiction.  *See E.R. Squibb*, 160 F.3d
at 939 ("[W]e also hold that when a Lloyd's Name (including a lead underwriter) is properly
sued only in an individual capacity, it is that Name's characteristics, both as to citizenship and
jurisdictional amount, that are determinative for jurisdictional purposes."); *see also E.R. Squibb
& Sons, Inc. v. Lloyd's & Cos.*, 241 F.3d 154, 162 (2d Cir. 2001) (lead Name sued individually
must satisfy the requirements of diversity and jurisdictional amount).  But there is no indication
that ANHAM seeks to sue only the lead Names in their individual capacities – indeed, when
"'Certain Underwriters at Lloyd's of London' (or some close variation) is the named Lloyd's
party," that is "commonly understood to refer to all Names subscribing to a given policy in
dispute," *Vulcan Inc. v. Zurich Am. Ins. Co.*, No. 21-CV-336, 2022 WL 1289666, at *4 (W.D.
Wash. Apr. 29, 2022) – and even if ANHAM did desire to do so, neither the AC nor the Lloyd's
Policies identify the citizenship or amount in controversy as to any lead Name, and the United
Kingdom court's anti-suit injunction prohibits permitting further discovery into the Names
behind the syndicates or amendment of the AC to assert individual-capacity claims, (*see* ECF
Nos. 49-2, 49-3).

*Inc.*, 397 F. Supp. 3d 357, 364-65 (S.D.N.Y. 2019).  "Conclusory allegations that the amount-in-controversy requirement is satisfied are insufficient."  *Id.*

The AC pleads that "the amount in controversy exceeds $75,000, exclusive of interest and costs."  (AC ¶ 18.)  Given the facts in the AC support that the claim is for the $41 million limit of the policies, (*see* AC ¶¶ 10, 12, 16, 29, 60), these allegations would satisfy Section 1332's jurisdictional amount in a typical case against an insurer, *see, e.g.*, *Baldwin v. Certain Underwriters Lloyds London*, No. 23-CV-583, 2023 WL 6466197, at *3 (M.D. La. Oct. 4, 2023); *see also Klaneski*, 680 F. Supp. 3d at 181-82 (Second Circuit applies "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy").  But when Lloyd's syndicates are named as the defendants, the $75,000 jurisdictional amount must be separately met for each Name in each syndicate because the liability of the Names is several, not joint.  *See E. R. Squibb*, 160 F.3d at 933; *Cannon* v. *Underwriters at Lloyds London*, No. 22-CV-3518, 2023 WL 8606794, at *3 (W.D. La. Dec. 12, 2023); *Baldwin*, 2023 WL 6466197, at *3.  While ANHAM argues that the Lloyd's Policies list the allocation of each syndicate's share of the $41 million dollar risk, (*see* Ps' Opp. at 9), that allegation is not sufficient because aggregation of claims against defendants to achieve diversity jurisdiction is barred when the defendants' liability is several, as is the case here with the Names.  *See E.R. Squibb*, 160 F.3d at 933 ("[T]he fact that the several liability of the Names derives from a single insurance policy does not alter the jurisdictional analysis."); *Am Int'l Grp. UK Ltd. v. Eaton Corp.*, No. 24-CV-86, 2024 WL 1656260, at *5 (S.D. Ala. Apr. 16, 2024) ("[T]he claims of multiple members of a Lloyd's syndicate cannot be aggregated to reach the jurisdictional threshold."); *Certain Underwriters at Lloyd's of London Syndicates v. Travelers Indem. Co.*, No. 06-CV-5238, 2006 WL 1896341, at *2 (W.D. Wash. July 7, 2006) ("Each amount in controversy

must be established individually with respect to each Name subscribing to the policies in the dispute."); *Humm v. Lombard World Trade, Inc.*, 916 F. Supp. 291, 299-300 (S.D.N.Y. 1996) ("The fact remains that the Names are severally liable for their proportionate share of the loss on the Policy.  Thus, their claims are separate and distinct and may not be aggregated.").

Because "[e]ach amount in controversy must be established individually with respect to each Name subscribing to the policies in the dispute," and because Defendants have "failed even to allege that all Names meet the amount-in-controversy threshold," *ChaChaLounge LLC v. Certain Underwriters at Lloyd's London*, No. 21-CV-1578, 2022 WL 1165038, at *4-5 (W.D. Wash. Apr. 20, 2022), the Court also lacks subject-matter jurisdiction for failure to meet the jurisdictional amount, *see Cannon*, 2023 WL 8606794, at *3.[7]

### B.     FRCP Rule 21

Plaintiffs have suggested, (Ps' Opp. at 10), that they could cure any deficiency in subject matter jurisdiction by dropping any non-diverse Name under FRCP 21, which provides, "On motion or on its own, the court may at any time, on just terms, add or drop a party." Fed. R. Civ. P. 21.  FRCP 21 permits "a court to drop a nondiverse party at any time to preserve diversity jurisdiction, provided the nondiverse party is not 'indispensable' under Rule 19(b)."  *CP Sols. PTE, Ltd. v. Gen. Elec. Co.*, 553 F.3d 156, 159 (2d Cir. 2009); *see MAve Hotel Invs. LLC v. Certain Underwriters at Lloyd's, London*, No. 21-CV-8743, 2024 WL 2830909, at *2 (S.D.N.Y. June 3, 2024); *Barton v. N.E. Transp., Inc.*, No. 21-CV-326, 2022 WL 203593, at *7 (Jan. 24,

---

[7] Because the Court lacks subject-matter jurisdiction, I do not address Defendants' remaining arguments for dismissal.  *See Prime Prop.*, 2021 WL 4066737, at *4; *Exec. Park Partners LLC v. Benicci Inc.*, No. 22-CV-2560, 2023 WL 3739093, at *7 n.4 (S.D.N.Y. May 31, 2023) (citing *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) and *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)).

2022); *Certain Underwriters*, 2012 WL 4471564, at *2.  To determine whether a party is "indispensable" under FRCP 19(b), the court considers four factors:

> (1) whether a judgment rendered in a person's absence might prejudice that person or parties to the action, (2) the extent to which any prejudice could be alleviated, (3) whether a judgment in the person's absence would be adequate, and (4) whether the plaintiff would have an adequate remedy if the court dismissed the suit.

*CP Sols.*, 553 F.3d at 159 (citing Fed. R. Civ. P. 19(b)).  Determining if a party is indispensable "can only be determined in the context of a particular litigation," *Barton*, 2022 WL 203593, at *7, and FRCP 19(b) employs a flexible standard, *see CP Sols.*, 553 F.3d at 159; *Jaser*, 815 F.2d at 242.

Plaintiffs' proposal does not appear feasible for several reasons.  First, there is no indication that Plaintiffs know, or can find out, which Names are non-diverse.  Second, even if that were not a problem, Plaintiffs would also still need to know the amount in controversy for each Name, and there is no indication it could obtain that information either.  Third, although I reach no conclusion on the matter, the Lloyd's underwriters may be indispensable parties.  Finally, the United Kingdom anti-suit injunction – which prohibits ANHAM from "tak[ing] any steps" in any case against the Lloyd's Insurers relating to the Lloyd's Policies, (ECF No. 49-3 at 2) – would seem to prohibit even dropping a Name or Names.  In an excess of caution, however, the Court will delay dismissal until July 24, 2024 to give Plaintiffs time to make a motion under Rule 21 if they can do so.

## IV.   <u>CONCLUSION</u>

For the reasons stated above, unless a Rule 21 motion is made by July 24, 2024, Defendant Tysers's motion to dismiss for lack of subject matter jurisdiction will be GRANTED; Defendant USI's motion to dismiss will be DENIED as moot; and the AC will be dismissed

without prejudice.  The Clerk of Court is respectfully directed to terminate the pending motions,

(ECF Nos. 79, 85).

**SO ORDERED.**

Dated: July 10, 2024
      White Plains, New York

                                              _____
                                              CATHY SEIBEL, U.S.D.J.